## IN THE U.S. DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## BENTON DIVISION

| | | |
|---|---|---|
| Lynda Pollock, as Independent Administrator of the Estate of Donald Pollock, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) ) | No: _____ |
| v. | ) ) ) | |
| Cody Runyon, April Volk Terri McDonald, Richland County, | ) ) ) | Plaintiff demands a jury trial. |
| Defendants. | ) ) ) | |

## COMPLAINT

NOW COMES the Plaintiff, Lynda Pollock, as Independent Administrator of the Estate of Donald Pollock, by and through her attorneys, Romanucci and Blandin, LLC, as her Complaint at Law against Defendants Officer Cody Runyon, Officer April Volk, Officer Terri McDonald, and Richland County, pleading as follows:

### Parties

1.    At all times relevant hereto, Plaintiff Lynda Pollock was a citizen of the United States and resident of the Village of Oblong, county of Crawford, State of Illinois. She is the Independent Administrator of the Estate of Donald Pollock.

2.      The County of Richland is a municipal corporation incorporated under the laws of the State of Illinois, and was, at all times material to the allegations made in this complaint, the employer of Defendant Officers Runyon, Volk, and McDonald. The County of Richland is responsible for the management and operation of the Richland County Jail.

3.      Officer Cody Runyon was at all times material to the allegations made in this complaint a sworn County of Richland law enforcement officer acting under color of law and within the scope of his employment with the County of Richland. He is sued in his individual capacity.

4.      Officer April Volk was at all times material to the allegations made in this complaint a sworn County of Richland law enforcement officer acting under color of law and within the scope of her employment with the County of Richland. She is sued in her individual capacity.

5.      Officer Terri McDonald was at all times material to the allegations made in this complaint a sworn County of Richland law enforcement officer acting under color of law and within the scope of her employment with the County of Richland. She is sued in her individual capacity.

## **Jurisdiction**

6.      This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343.

7.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights of the Fourteenth Amendment to the U.S. Constitution.

8.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the Illinois state law claims alleged herein.

## Facts Common to All Counts

9.     On March 4, 2025, Donald Pollock was booked into the Richland County Jail (the Jail).

10.     Mr. Pollock was alleged to have committed possession of ammunition without a FOID and adult use of cannabis in a motor vehicle.

11.     Upon his arrival at the Jail, Mr. Pollock told Officer Runyon that he had ongoing medical conditions requiring medication, and that his wife would be arriving to drop off his medications at some time during the night.

12.     Officer Runyon contacted State's Attorney Chelsey Clark about Mr Pollock's medical conditions and whether to hold him in Richland County custody.

13.     State's Attorney Clark advised Officer Runyon to hold Mr. Pollock unless he was having a medical event.

14.     Donald Pollock was placed in Cell 1 at approximately 9:14 p.m.

15.     Cell 1 is equipped with a motion-activated surveillance camera that is constantly monitored by officers on duty, including Officers Runyon, Volk, and McDonald

16.     At approximately 9:52 p.m., surveillance footage of Cell 1 displayed Mr. Pollock splashing water on his face, then wetting his t-shirt in the sink and placing it on his neck and shoulders.

17.     At approximately 9:54 p.m., Officers Runyon and Volk observed Mr. Pollock on the floor of the cell.

18.     At approximately 9:54 p.m., Mr. Pollock said to Officers Runyon and Volk, "I'm going to die dude, I'm dying."

19.     At approximately 9:55 p.m., Mr. Pollock said to Officers Runyon and Volk, "I'm going to be dead by the time you get back here, I promise."

20.     At approximately 9:56 p.m., Mr. Pollock said to Officers Runyon and Volk, "Obviously I need to be at the emergency room right now."

21.     At approximately 9:57 p.m., Mr. Pollock said to Officers Runyon and Volk, "I'm telling you man, I'll be dead in 10 minutes."

22.     At approximately 9:58 p.m., Mr. Pollock again told Officers Runyon and Volk that he was about to die.

23.     At approximately 10:05 p.m., Mr. Pollock kicked and banged on the door, then removed his pants.

24.    At approximately 11:35 p.m., Mr. Pollock moved from the bed to the floor.

25.    At approximately 11:45 p.m., Mr. Pollock's wife, Plaintiff, arrived with his medication and handed them to Officer McDonald.

26.    At approximately 11:45 p.m., Plaintiff asked Officer McDonald how Mr. Pollock was doing, to which Officer McDonald responded, "he's doing fine."

27.    Mr. Pollock never received the medication that Ms. Pollock brought to the jail.

28.    The medication included verapamil, tizanidine, dicyclomine, ondansetron, and rosuvastatin. These medications would have indicated to staff that Mr. Pollock had serious medical conditions, including issues related to the heart and liver.

29.    From 11:35 p.m. to 1:12 a.m., Mr. Pollock could be seen on the surveillance footage fidgeting, flailing, rolling, and constantly moving around. He also placed his hand and arm on the toilet many times.

30.    The movements that Mr. Pollock made on the floor were unusual and obviously indicative of a medical emergency.

31.    At approximately 1:12 a.m., surveillance footage showed Mr. Pollock standing up then falling back down to the floor.

32.    From 1:12 a.m. to 5:48 a.m., Mr. Pollock remained on the floor and continued to writhe constantly and unusually.

33.    Officer McDonald was responsible for watching the Cell 1 surveillance camera throughout the night.

34. Via the surveillance camera, Officer McDonald viewed Mr. Pollock writhing constantly and unusually on the cell floor throughout the night.

35. Via the surveillance camera, Officer Runyon viewed Mr. Pollock writhing constantly and unusually on the cell floor throughout the night.

36. Via the surveillance camera, Officer Volk viewed Mr. Pollock writhing constantly and unusually on the cell floor throughout the night.

37. Mr. Pollock's behavior in Cell 1 as well as his statements identifying a medical emergency should have prompted Officers Runyon, Volk, and McDonald to conduct or facilitate a medical evaluation.

38. Mr. Pollock's behavior in Cell 1 as well as his statements identifying a medical emergency should have prompted Officers Runyon, Volk, and McDonald to refer or transfer Mr. Pollock to the hospital.

39. Mr. Pollock's behavior in Cell 1 as well as his statements identifying a medical emergency should have prompted Officers Runyon, Volk, and McDonald to contact medical personnel, such as the on-call nurse.

40. Despite knowing of Mr. Pollock's medical emergency, Officers Runyon, Volk, and McDonald failed to conduct or facilitate a medical evaluation, refer or transfer Mr. Pollock to the hospital, contact medical personnel, or take any other reasonable steps to provide Mr. Pollock with medical treatment. These

failures were objectively unreasonable and placed Mr. Pollock at substantial risk of serious harm.

41. Richland County had no medical staff on site on the night of Mr. Pollock's death.

42. At approximately 5:50 a.m., Mr. Pollock was found face down and deceased in Cell 1, with blood stains on his clothing.

43. The Richland County Coroner declared Mr. Pollock's cause of death to be methamphetamine toxicity.

44. Methamphetamine toxicity is a condition that can be treated with prompt medical attention.

### Count 1: 42 U.S.C. §1983, Fourteenth Amendment Due Process
*Pollock v. Runyon, Volk, and McDonald*

45. Paragraphs 1 through 44 are repeated and incorporated in this section as though fully set forth herein.

46. Between approximately 9:52 p.m. and 5:58 a.m., Defendants Runyon, Volk and McDonald knew that Mr. Pollock was suffering a medical emergency and at substantial risk of serious harm.

47. Mr. Pollock explicitly stated that he was experiencing a deadly medical emergency to Runyon and Volk, and his medical emergency was evident to

Runyon, Volk, and McDonald, as his concerning symptoms were visible via Cell 1's surveillance camera.

48. Despite this knowledge, Defendants Runyon, Volk and McDonald failed to conduct or facilitate a medical evaluation, refer or transfer Mr. Pollock to the hospital, contact medical personnel, or take any other reasonable steps to provide Mr. Pollock with medical treatment.

49. This conduct was objectively unreasonable and placed Mr. Pollock at substantial risk of serious harm.

50. As a direct and proximate result of this objectively unreasonable conduct, Mr. Pollock experienced extraordinary pain and suffering and ultimately died.

## **Count 2: Illinois Law, Willful and Wanton Conduct**
### *Pollock v. Runyon, Volk, and McDonald*

51. Paragraphs 1 through 51 are repeated and incorporated in this section as though fully set forth herein.

52. At all relevant times, Officers Runyon, Volk, and McDonald owed a duty to refrain from willful and wanton acts and omissions that could cause harm to others, such as Mr. Pollock.

53. Officers Runyon, Volk, and McDonald showed utter indifference to and conscious disregard of Mr. Pollock's safety by failing to take any reasonable measures to address his obvious medical emergency, as described *supra*.

54.   At all material times, Officers Runyon, Volk, and McDonald, by and through their acts and/or omissions and as agents, employees, and officers of Richland County breached their duty to Mr. Pollock by acting in an intentional manner, willful and wanton manner, with utter indifference, and with conscious disregard for Mr. Pollock's health and safety.

55.   In doing so, Officers Runyon, Volk, and McDonald exhibited willful and wanton conduct, thereby causing Mr. Pollock's pain, suffering, and death.

## Count 3: Illinois Law, *Respondeat Superior*
*Pollock v. County of Richland*

56.   Paragraphs 1 through 55 are repeated and incorporated in this section as though fully set forth herein.

57.   When Officers Runyon, Volk, and McDonald committed those acts so alleged in this Complaint they were members and agents of Richland County, acting at all relevant times within the scope of their employment and under color of law.

58.   Defendant Richland County is liable as principal for all torts committed by its agents.

59.   As a direct and proximate result of Officers Runyon, Volk, and McDonald's misconduct alleged in this Complaint, Mr. Pollock experienced pain, suffering, and death.

### Count 4: Illinois Law, Indemnification
*Pollock v. County of Richland*

60. Paragraphs 1 through 59 are repeated and incorporated in this section as though fully set forth herein.

61. Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based upon the employees' misconduct committed within the scope of their employment activities.

62. Officers Runyon, Volk, and McDonald were employees of Richland County who acted within the scope of their employment in committing the misconduct described herein.

63. Richland County is responsible to pay any judgment entered against any Richland County officer who caused Mr. Pollock's pain, suffering, and/or death.

### Prayer for Relief

64. Plaintiff Lynda Pollock has been required to engage the services of the undersigned counsel. As such, he is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

65. Wherefore, Plaintiff Lynda Pollock respectfully requests the following relief:

    a. Compensatory damages, in an amount to be ascertained at trial, for the constitutional violations and willful and wanton conduct committed upon Mr. Pollock, complained of herein. This includes

grief, sorrow, loss of society, care, and companionship, funeral and burial expenses, loss of services, and loss of consortium;

b.  Punitive damages from individual Defendant officers, in an amount to be ascertained at trial, for their constitutional violations, willful and wanton conduct, and intentional battery committed upon Mr. Pollock, complained of herein;

c.  Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1, *et seq*;

d.  Pre-judgment interest;

e.  Post-judgment interest; and

f.  Any further relief this Court may deem just and proper.

66.    Plaintiff Lynda Pollock demands a jury trial.

Dated: November 25, 2025.

Respectfully Submitted,

/s/ Sam Harton

Sam Harton
ROMANUCCI & BLANDIN
321 N Clark St.
Chicago, Illinois 60654
312-253-8590
IL ARDC No. 6342112